CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
September 13, 2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| **JEFFREY SEAN GEE,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 7:23-cv-00070** |
| | ) |
| | ) |
| **CARILION CLINIC, *et al.,*** | ) |
| | ) |
|     **Defendants,** | ) |

### <u>MEMORANDUM OPINION</u>

Plaintiff, Jeffrey Sean Gee, requested an exemption from receiving a COVID-19 vaccination on religious grounds. His employer, Carilion Clinic, accommodated this request and did not require Gee to receive the vaccination. Now, Gee brings this employment discrimination action against both Carilion and its associate general counsel alleging unlawful termination, retaliation, and harassment because he sought and received the religious exemption from Carilion's COVID-19 vaccination requirement. Defendants moved to dismiss the Complaint and Gee moved for summary judgment. I denied Gee's motion for summary judgment, but I granted the motion to dismiss with leave to amend. Dkt. 38.

Gee has now filed what he describes as "an amendment to the complaint." Dkt. 40. Gee states that this amendment contains, "[a]dditional concise description [sic] and supporting evidence for the complaint of religious discrimination, including safety violations, harassment and retaliation." *Id.* Gee notes that he has attached "the amended complaint," which appear to be the next two pages. *Id.* at 2. These two pages consist of eight paragraphs which generally summarize Gee's claims as originally filed. Gee also attached what he labels "Exhibit 3" which includes screenshots of previously submitted text messages. Gee also incorporates into the

Amended Complaint Exhibits 1 and 2 from the original Complaint. *See* note attached to Dkt. 40.

The Amended Complaint adds almost no new information.[1] Gee primarily restates what he has already pled. The new information Gee pleads involves a January 2022 exposure to COVID-19 and his doctor's advice to quarantine. Dkt. 40 at 3. Gee claims that his manager overrode the doctor's instruction, making "[Gee's] healthcare decisions for himself."[2] *Id.* Gee also states that he "never attempted to be put on leave." *Id.* In response, Defendants filed a second motion to dismiss this action. Dkt. 41.

## I.    Background

I accept Gee's factual allegations as true for purposes of the motion to dismiss. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.").

Aside from the single piece of new information above, the facts alleged by Gee have not changed. Gee is a former employee of Carilion. He alleges that he "had put in a religious exemption for the COVID[-]19 vaccine [and that, as a result, Carilion] was trying to push [him]

---

[1] Because *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364 (1982) (per curiam), I read the Amended Complaint as incorporating all facts pled in the original Complaint.

[2] The screenshotted text messages in Exhibit III to the Amended Complaint seem to somewhat contradict this. The messages appear to show Nick Hoyt, Gee's manager" asking Gee to complete a screening form on behalf of Carilion and a request that he be tested for COVID-19 on January 11, 2022. Gee does get tested and Hoyt instructs him to "do what covid team says . . . ." The next day, Gee informs Hoyt his doctor has given him negative results, but he has yet to hear from the drive-thru test (The Carilion test location where Hoyt had directed him). Hoyt responds "[o]k, good. Thanks." It is unclear what Gee contends is unlawful about this exchange, or how it fits into the allegations asserted in the Complaint.

out for not complying with their attempts to mandate vaccination" in violation of Title VII.[3]
Complaint (Dkt.1), p. 4, ¶ C. Specifically, Gee claims that he was unlawfully terminated, and
suffered retaliation, and harassment because he sought a religious exemption from the COVID-
19 vaccination.

Gee received a write-up or "infraction" on December 3, 2021, for drafting the religious
exemption request during work time; a written warning for attendance and failure to comply with
guidelines on January 4, 2022; a final written warning on January 19, 2022, for attendance; and
termination on March 23, 2023, for use of profanity in a conversation with a supervisor. *Id.*, p. 4,
¶ B and Attachment to Complaint (Dkt. 1-1), pp. 1–3.

Gee completed and submitted the Carilion Clinic COVID-19 Vaccine Religious
Exemption Form on work time and Carilion approved the request. However, he contends that he
received a disciplinary write-up for making the exemption request during work hours. Complaint
(Dkt.1), p. 4, ¶ B. Gee asserts that Carilion engaged in a pattern of targeted harassment and
retaliation designed to "push him out" for not "complying with [Carilion's] attempts to mandate
vaccination." *Id.*, p. 4, ¶¶ B–C and Attachment to Complaint (Dkt. 1-1), pp. 1–4. Specifically,
Gee alleges that in September 2021, Carilion changed his schedule and required that he work on

---

[3] Gee states that his cause of action is "[d]iscrimination, harrassment [sic], retaliation 88-352 (78
stat 241) US Code § 1692d, 10 US Code § 932-Art. 132." 15 U.S.C. § 1692d and 10 U.S.C.
§ 932 - Art. 132 are not applicable to the Gee's asserted claim. 10 U.S.C. § 932 - Art. 132 deals
with the Uniform Code of Military Justice, and 15 U.S.C. § 1692d addresses the use of
harassment or abuse by a debt collector in the collection of a debt. Gee also cites to the Civil
Rights Act of 1964 and asserts a written claim for employment discrimination. I read Gee's
pleadings in the light most favorable to him and interpret them to assert a claim of employment
discrimination through unlawful termination, retaliation, and harassment, in violation of Title VII
of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et. seq.*

certain tasks which usually need two people for safety reasons. Gee contends that in October

2021 or before,[4] he raised safety concerns about a damaged boiler that he believed created a

potential life safety issue. Gee complains that his direct supervisor, Nick Hoyt, unnecessarily

contacted him on his personal cell phone from June 16, 2021, to March 23, 2022. Finally, Gee

complains about receiving written warnings for attendance in January 2022 which he contends

was part of a pattern of harassment and retaliation culminating in his termination in March 2022.

Attachment to Complaint (Dkt. 1-1), pp. 1–4. Gee alleges that Carilion's ultimate goal was his

termination or resignation and to "push him out" because he sought a religious exemption from

taking the required COVID-19 vaccination. Complaint (Dkt.1), p. 4, ¶ C.

## II.     Standard of Review

        "A complaint must contain sufficient factual matter . . . to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). I accept all factual allegations in the

complaint as true and draw all reasonable inferences in Gee's favor. *Erickson v. Pardus*, 551

U.S. 89, 93 (2007). Legal conclusions, however, are not entitled to the same presumption of

truth. *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (noting that while detailed factual

allegations are not required, a plaintiff must still provide more than labels, conclusions, or a

"formulaic recitation of the elements of a cause of action").

---

[4] Gee claims that he complained about the boiler in October 2022, but this must be a mistake as
Carilion terminated him in March of 2022. I construed the Complaint to allege that Gee raised
the boiler concern in October 2021.

As Gee proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted). However, as with all plaintiffs, a *pro se* plaintiff must "demonstrate more than a sheer possibility that a defendant has acted unlawfully," and must "articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief." *Hodge v. Gansler*, 547 F. App'x 209, 210 (4th Cir. 2013) (quotation marks omitted). Additionally, this judicial solicitude "does not require [district] courts to conjure up questions never squarely presented to them. District judges are not mind readers. Even in the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986) The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . [and] only a complaint that states a plausible claim for relief survives a motion to dismiss." *Hicks v. Kiser*, 2022 WL 4593099, at \*2 (W.D. Va. 2022), *aff'd*, 2023 WL 3073531 (4th Cir. 2023).

### III.   Analysis

Gee asserts three claims against both Carilion and Patrick Callahan under Title VII - religious discrimination, harassment, and retaliation, but he again makes no factual allegations against Callahan, Associate General Counsel at Carilion. In fact, beyond identifying Callahan as a defendant in the case caption, Gee does not identify any actions taken by Callahan. It is well-settled that an individual such as Callahan cannot be sued under Title VII. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). Therefore, I again find Gee has failed to state a valid claim against Callahan and will dismiss him from this action. I turn now to the allegations

against Carilion.

### A. Religious Discrimination

A claim of discrimination under Title VII can be proven either through (1) direct evidence; or (2) the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Foster v. Go Wireless, Inc.*, WL 972158, at *5 (W.D. Va. 2017) (internal citations omitted). To establish a violation by direct evidence, a plaintiff must present "evidence of conduct or statements that both directly reflect on the alleged discriminatory attitude and that bear directly on the contested employment discrimination." *Id.* Here, Gee makes no allegations in the Complaint of direct evidence of discrimination. There are no text messages, emails, verbal communications, or other acts which Gee alleges to have occurred which indicate that Carilion discriminated against him because of his religious beliefs. In fact, Gee admits Carilion granted his request and exempted him from its COVID-19 vaccination requirement. Complaint (Dkt.1), p. 4, ¶ B.

As such, I consider Gee's Complaint under the *McDonnell Douglas* framework which requires that he state facts at the outset that plausibly establish: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Howard v. Blue Ridge Health Dist.*, 2023 WL 2541132, at *4 (W.D. Va. 2023) (citing *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 2012)).

Here, Gee has not made factual allegations that he is a member of a protected class. He asserts no facts regarding his religion or the nature of his sincerely held religious beliefs.[5] To

---

[5] The Complaint does not specifically allege Gee's religion or the nature of his sincerely held

determine whether an employee's beliefs are religious in nature, courts consider "whether the beliefs in question (1) 'address fundamental and ultimate questions having to do with deep and imponderable matters,' (2) are 'comprehensive in nature,' and (3) 'are accompanied by certain formal and external signs.'" *Ellison v. Inova Health Care Servs.*, No 1:23-cv-00132, 2023 WL 6038016, *4 (E.D. Va. Sept. 14, 2023) (quoting *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981). In cases involving objections to receiving vaccines, "it is not sufficient merely to hold a 'sincere opposition to a vaccination'; rather, the individual must show that the 'opposition to vaccination is a religious belief.'" *Brown v. Children's Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) (quoting *Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 490 (3d Cir. 2017). Several federal courts have held that allegations similar to Gee's are insufficient to survive a motion to dismiss when the plaintiff is unable to tie his objection to a vaccine to their sincerely held religious beliefs. *E.g.*, *Ellison*, No 1:23-cv-00132, 2023 WL 6038016, *4; *Kiel v. Mayo Clinic Health Sys. Se. Minn.*, No. 22-1319, 2023 WL 5000255 (D. Minn. Aug. 4, 2023); *Winans v. Cox Auto., Inc.*, 699 F. Supp. 3d 394 (E.D. Pa. 2023).

However, even assuming that Gee is a member of a protected class, the Complaint does

---

religious belief. *See generally*, Complaint (Dkt.1) and Attachment to Complaint (Dkt. 1-1). When asked by Carilion to identify his sincerely held religious belief, practice, or observance that was the basis for his objection to receiving the COVID-19 vaccine and qualifying for the religious exemption, Gee wrote,

> I will no longer be injesting [sic] or injecting impurities in my body/temple due to religious convictions. I am thus, exercising my 1st amendment right to religious freedom; which coincidentally is a natural/God given right, bestowed to me by the creator. These unalienable rights were then documented & written into law during the founding of the United States of America, in which I am a citizen of!

Defendant's Br. in Supp., Exhibit A (Dkt. 11-1).

not contain adequate allegations that his job performance was satisfactory or that Carilion treated him differently from similarly situated employees outside the protected class.

In evaluating whether an individual was performing satisfactorily it "is the perception of the decision maker which is relevant." *Johnson v. Mechanics & Farmers Bank*, 309 F. App'x 675, 683 n.8 (4th Cir. 2009) (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). A plaintiff, by their own testimony "cannot establish a genuine issue as to whether" the plaintiff was performing satisfactorily. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 1980).

Gee's Complaint demonstrates that his performance was not satisfactory. He received multiple write-ups for attendance and was terminated for use of profanity—something that Gee admits he does. Use of profanity is widely held to be a legitimate, non-discriminatory reason for termination which defeats any inference of intentional discrimination. *Blake v. Wells Fargo Bank, N.A.*, 2020 WL 406358, at *11 (M.D.N.C. 2020), *aff'd*, 819 F. App'x 183 (4th Cir. 2020); *David v. Winchester Med. Ctr.*, 2018 WL 310140, at *14 (W.D. Va. 2018), *aff'd*, 759 F. App'x 166 (4th Cir. 2019); *Duheme v. Columbia CSA-HS Greater Columbia Healthcare Sys. LP*, 2014 WL 468942 (D.S.C. 2014).

To the extent Gee claims the discrimination arose from the disciplinary write-ups leading up to his termination, these claims fail because of the lack of adverse action. As noted in *Burlington N. & Santa Fe Ry. V. White*, 548 U.S. 53, 61–63 (2006), the scope of what constitutes an "adverse employment action" differs depending on whether the context is that of substantive discrimination as opposed to claims of retaliation. For substantive discrimination claims, an adverse action is one that "affect[s] employment or alter[s] the conditions of the workplace." *Id.* at 62; *Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015).

Here, there is no allegation by Gee that these write-ups, by themselves, materially affected his employment or altered the conditions of the workplace.

Lastly, Gee has failed to allege any facts in support of his claim that he was treated differently from similarly situated employees who did not share his unspecified religious affiliation. To satisfy this prong of the *McDonnell Douglas* framework, a plaintiff must allege "sufficient commonalities on the key variables between [himself] and the would-be comparator to allow the type of comparison that, taken together with the other *prima facie* evidence, would allow a jury to reach an inference of discrimination." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (internal citation omitted). In contrast to this, Gee's Complaint only provides bare assertions that other employees were treated differently than him, without specifying those individuals or providing any specific factual support as to how these anonymous employees were allegedly treated differently. These bare assertions are not sufficient to survive Defendants' Motion to Dismiss. *Howard*, 2023 WL 2541132, at *4 (where plaintiff simply alleged that "employees [outside of the protected class] were not dismissed from their positions like the Plaintiff," and that "[n]o . . . employees [outside the protected class] were terminated by [defendant] during the period when Plaintiff was terminated[,] . . . [t]hose allegations [were] wholly insufficient and lacking in any factual detail" to survive a motion to dismiss).

The new facts Gee has alleged do not change this analysis. Gee alleges that, in January 2022, he was exposed to COVID-19 and his doctor advised him to quarantine. Dkt. 40 at 3. Gee asserts his manager overrode the doctor's instruction, making "[Gee's] healthcare decisions for himself," and that he "never attempted to be put on leave." *Id.* Neither of these alleged facts address any prong of the *McDonnell Douglas* framework and therefore do not change the Court's

9

conclusion that Gee's allegations fall short of the 12(b)(6) standard.

### B. Harassment

To plausibly state a claim for a hostile work environment in violation of Title VII, a plaintiff must allege that: "(1) he experienced unwelcome harassment; (2) the harassment was based on his [protected class] or protected activity; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Holloway v. Maryland* 32 F.4th 293, 300 (4th Cir. 2022). Here, the Complaint lacks any allegations that any "harassing" conduct towards him was based on his unspecified religious affiliation or for any legally cognizable protected activity. *See Howard*, 2023 WL 2541132, at *8. Additionally, Gee fails to allege facts necessary to show that the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive atmosphere as required by the third prong laid out in *Holloway*.

The Fourth Circuit's recitation of the facts in *Holloway* when affirming the 12(b)(6) dismissal of plaintiff's hostile work environment claims speaks to the invalidity of Gee's claim here:

> Holloway's complaint falls considerably short of alleging an abusive working environment. He alleges that, over the course of several months, Pindale [the Director of Human Resources who was White, unlike Holloway who was Black] required him to communicate with Washington [Human Resources Deputy who was Black] instead of Pindale directly; employees were surveyed about Holloway's leadership and his whereabouts during the workday; Teller [Holloway's boss] criticized Holloway's leadership and budget management in meetings; Teller scheduled a meeting an hour and a half before Holloway's usual start time and, during the meeting, yelled at Holloway, slammed documents onto a table, and required Holloway to address him as "sir"; Teller required Holloway to sign a disciplinary evaluation or else be considered insubordinate; and Teller did not honor Holloway in an employee-recognition program.

10

*Id.* at 301.

As with *Holloway*, Gee's recitation of religion-neutral facts alleging harassment fails to show anything more than a general disagreement with his supervisor as to the nature of his work assignments, and the amount and timing of work communications. This is not sufficient to sustain a hostile work environment claim under Title VII. *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than 'rude treatment by [coworkers],' 'callous behavior by [one's] superiors,' or 'a routine difference of opinion and personality conflict with one's supervisor' are not actionable under Title VII") (internal citations omitted).

The additional facts provided in Gee's Amended Complaint underscore the conclusion that Gee's complaint fails to state a claim. Gee disagreed with his manager about having to quarantine and get tested for COVID-19. However, such a disagreement does not rise to the level of harassment. Accordingly, the Court's prior conclusion that Gee has not pled sufficient facts as required by *Twombly* and *Iqbal* to state a harassment claim remains unchanged.

**C. Retaliation**

To allege a Title VII retaliation claim, a complaint must allege that "(1) [the plaintiff] engaged in a protected activity; (2) an adverse action was taken against [him] by the [d]efendant; and (3) there was a causal connection between the first two elements." *Forgus v. Mattis*, 753 F. App'x 150, 154 (4th Cir. 2018). The Complaint does not allege any facts that support a reasonable inference, beyond speculation, that Gee engaged in any protected activity, and even if it had, it fails to allege facts that support a causal connection between the protected activity and an adverse action.

Protected activity falls into one of two categories—participation or opposition. *Laughlin v. Met. Wash. Airports*, 149 F.3d 253, 259 (4th Cir. 1998). Participation includes "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Id.* There are no allegations in the complaint that Gee was involved in any protected activity. Gee's EEOC charge was filed eight months after his termination (Complaint (Dkt. 1), p. 2, at 4), and the internal complaints Gee made prior to his termination, as outlined in the Complaint, dealt with issues unrelated to any conduct prohibited by Title VII, including safety complaints and annoyance with receiving too many texts from his supervisor during non-work hours. *See generally* Dkts.1, 1-1. Title VII is not a general bad acts statute and does not prohibit an employer from taking adverse employment actions against an employee who opposes employment practices outside Title VII. *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011), *cert. denied*, 565 U.S. 941 (2011).

Activities in opposition "include staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities," but "only when an employee has an objectively reasonable belief in light of all of the circumstances that a Title VII violation has happened or is in progress . . . ." *Howard*, 2023 WL 2541132, at *10 (quoting *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 411 (4th Cir. 2022)). While Gee opposed Carilion's COVID-19 vaccine policy, he cannot make a plausible claim that he believed that this policy was in violation of Title VII as Gee was aware of, took advantage of, and was granted an exemption to this policy. Thus, Gee cannot plausibly claim was engaged in any legally cognizable oppositional activity.

Even if Gee had engaged in protected activity, the allegations in the Complaint do not

12

establish a causal connection between the alleged protected activity and the alleged adverse action by his the employer. To show such causation "the employer must have taken the adverse action *because* the plaintiff engaged in a protected activity." *Id.* at *12 (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

Gee's Complaint contains no factual allegations to suggest that Carilion took any adverse action against him because he asserted his right to a religious exemption to receiving the COVID-19 vaccine. Instead, Gee expressly acknowledges that Carilion terminated him because of his use of profanity. Gee's conclusory assertion that this termination was, in fact, due to his request for an exemption to the COVID-19 vaccine policy is not sufficient to survive Defendants' Motion to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (to survive a motion to dismiss "the Complaint demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (cleaned up). The new facts alleged in Gee's Amended Complaint do nothing to alter this analysis.

## IV.    Conclusion

This Court is under an obligation to read a *pro se* litigant's objections broadly. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). However, a district court may not rewrite a complaint to include claims that were never presented or construct the plaintiff's legal arguments for him. *Bryant v. Malbus*, No. L-10-2206, 2011 WL 2436547, at *2 (D. Md. June 13, 2011). Gee's claims, liberally construed and considering the new facts alleged in the Amended Complaint, do not state a claim upon which this Court can grant relief. Accordingly, I **GRANT** Carilion's Motion to Dismiss.

At oral argument, Gee moved the Court for leave to amend his Complaint once more.

13

"Before dismissing a pro se . . . complaint *with* prejudice for failure to state a claim . . . , the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure them unless it is clear the deficiencies cannot be cured by amendment. *Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 908, 911 (C.D. Cal. 2016) (citing *Eldridge v. Block,* 832 F.2d 1132, 1135–36 (9th Cir. 1987)). However, *pro se* plaintiffs are not entitled to *multiple* opportunities to amend their pleadings. *See Salazar v. McGillicuddy Works, LLC*, 2013 WL 209210, at *2 (S.D. Ga. Jan. 17, 2013).

The Court laid out in detail the deficiencies of the original complaint in its opinion on the first motion to dismiss. The Court, in the interests of justice, expressly granted Gee leave to amend his complaint to try and correct those deficiencies if he was so able. As stated above, Gee's Amended Complaint failed to resolve *any* of the deficiencies the Court noted in the original Complaint. Given the deficiencies of Gee's claims in his amended complaint, and Gee's reliance upon functionally the exact same factual pleadings in both the original and amended complaints, I determine that granting leave to amend again would be futile and cause undue prejudice to Defendants and therefore is not in the interests of justice. Nevertheless, I **DISMISS** Gee's Amended Complaint **WITHOUT PREJUDICE**.

An appropriate order shall follow.

Entered:   September 13, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

14